CITY OF TAMPA, *et al.*, v. COLUMBIA RESTAURANT, INC.

194 So. 319
Opinion Filed February 27, 1940

*Alonzo B. McMullen* and *Ralph A. Marsicano,* for Appellants;

*Charles F. Blake,* for Appellees.

WHITFIELD, J.—See dissenting opinion for the salient facts. The statutes provide for taxing licenses issued to restaurants. Chapter 17062, Acts of 1935, Section 3357 (2128) C. G. L. Perm. Supp.; and this Court has held that a restaurant is not a "store" within the provisions of the chain store taxing statute, Chapter 16848, Acts of 1935. See J. M. Lee, as Comptroller v. The Cloverleaf, Inc., 130 Fla. 435, 177 So. 722. But the provisions of paragraph (f), Section 11, Chapter 16774, Acts of 1935, Section 7 or any other provisions of said Chapter, do not contemplate that a restaurant may be operated in connection with the authorized sale of liquors to be consumed on the premises where sold, without the payment of State, county and municipal license taxes by restaurants as may be provided by law.

The judgment is reversed.

So ordered.

BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.

TERRELL, C. J., dissents.

TERRELL, C. J. (dissenting).—Appellees, as complainants, filed their bill of complaint in the Circuit Court alleging that they had procured a license under Chapter 16874, Acts of 1935, to sell intoxicating liquors at retail for consumption on the premises and praying that appellants, as defendants, be restrained from imposing an additional license tax on them for operating a restaurant and for selling cold drinks as part of their liquor business. A motion to dismiss and to strike certain portions of the bill of complaint was denied and this appeal was prosecuted.

The question presented is whether or not the license exacted under Chapter 16774, Acts of 1935, for the privilege of selling intoxicating liquors for consumption on the premises authorizes appellees to do a restaurant and cold drink business without the payment of an additional license therefor.

This question turns on the interpretation of paragraph (f) of Section 11, Chapter 16774, Acts of 1935, the pertinent part of which is as follows:

"Vendors licensed under Section 5, sub-sections IV, V, VI, VII, or VII½, shall provide seats for the use of their customers. Such vendors may sell the beverages herein defined by the drink or in containers for consumption on or off the premises where sold, but when such beverages are sold by the drink or for consumption on the premises where sold, they shall be sold only to customers who shall consume such beverages while seated. It shall be unlawful for such premises to contain swinging doors or to contain screens so placed as to prevent passersby from seeing into the premises. There shall not be sold at such places of business anything other than the beverages hereby permitted and what is customarily sold in a restaurant. At all places of business where sales by the drink or for consumption on

the premises are permitted, regular meals shall be offered, prepared and served, either *à la carte* or American plan, on the premises when open for business. * * *"

The mere reading of this provision of the statute supplies its interpretation. Chapter 16774, Acts of 1935, and Chapter 18015, Acts of 1937, set up a complete system for the manufacture, sale, and dispensing of intoxicating liquors. A heavy license is imposed for the privilege and the quoted statute requires that meals be sold on the premises when opened for business if the liquor sold is consumed thereon. A casual reading of these Acts leaves no doubt that the privilege of serving meals was included in the license for selling intoxicating liquors and both were a part of the same business. Borrego v. Lee, Comptroller, 132 Fla. 49, 180 So. 343.

In reaching this conclusion, I do not overlook the contention of appellants that the adoption of the homestead amendment has greatly reduced the finances of all municipalities including appellant and that the deficit must be provided from other sources.

The answer to this question is that the very people who approved the homestead amendment were citizens of the municipalities whose resources were depleted thereby and were on notice of the disastrous consequences recited. It is not out of place to state further that the mere fact of destroying one resource of a city does not *ipso facto* create another. The power to impose an excise tax is one that must be exercised in positive terms and will not be permitted by implication. Neither can it be extracted from distressed financial circumstances like oxygen from the ether. As a people we must learn that we can't demand more and better services and lower taxes from the government, all in the same breath.

I therefore dissent.